**In re DOUGLAS HEREFORD RANCH, INC., a corporation, Paul O. Douglas, Constance F. Douglas, Cleone E. Douglas, Debtors.**

Bankruptcy Nos. 485–00568, 485–00575, 485–00677 and 485–00574.

United States Bankruptcy Court, D. Montana.

March 11, 1987.

## ORDER CONFIRMING PLAN OF REORGANIZATION

JOHN L. PETERSON, Bankruptcy Judge.

Hearing was held on January 20, 1987, on confirmation of the Debtors' Chapter 11 Plan of Reorganization. No ballots had been filed by creditors either accepting or rejecting the Plan by the date of the hearing.

The Plan has four classes of creditors as follows:

| | | | | | |
|---|---|---|---|---|---|
| Class I | Secured | – | Metropolitan Life Insurance Company | – | $200,000.00 |
| Class II | Secured | – | Farmers and Merchants Bank | – | 392,939.73 |
| Class III | Unsecured Insider | – | Cleone E. Douglas | – | 100,000.00 |
| Class IV | Unsecured and Class V Unsecured | | | – | 3,208.76 |
| | | | | | $696,148.49 |

The Plan and Disclosure Statement show that the Class I creditor is not impaired, while all other classes are impaired under the Plan. The Plan further shows the Class II creditor, Farmers and Merchant Bank, will be paid the total of its debt over 12 years at 8½% interest per year, based on a 30 year amortization schedule with a balloon payment of $289,158.00 in the twelfth year. After the confirmation hearing, Farmers and Merchants Bank and the Debtors filed a Stipulation regarding modification and acceptance of Amended Plan of Reorganization. That agreement and plan modification provides in essence that the Bank shall be paid the full amount of its obligation in the sum of $392,939.73, amortized over 30 years at 8½% per annum with a balloon payment on the 50th quarter after confirmation of the Plan. Other provisions of the agreement provide for maintenance of the herd level, deferring payment to the insider Cleone Douglas until the Bank is paid in full and retention of the Bank's lien on the Debtors' collateral during the term of the Plan. As a result of the agreement, Farmers and Merchants Bank has withdrawn its objection to the Plan and votes now to affirmatively accept the modified Plan.

The Debtors are engaged in farming and ranching in Northeastern Montana. The corporation Hereford Ranch, Inc. is owned by the Debtors Paul, Constance and Cleone Douglas, who are also personal guarantors of the Farmers Bank note. The Debtors fix the value of their assets as follows:

| | | |
|---|---|---|
| Real property consisting of 2240 acres of grazing land and 640 acres farm land | - | $362,400.00 |
| Cash on hand | - | 50,000.00 |
| Furniture | - | 5,000.00 |
| Farm machinery | - | 84,580.00 |
| Vehicles | - | 23,220.00 |
| Livestock | - | 107,450.00 |
| | | $632,650.00 |

A dispute had existed between the Debtors and the Bank as to value of the real property. The Bank presented expert testimony of a land appraiser which fixed the value of the real estate and improvements at $426,000.00, based on comparable sales. The Debtors rebutted one aspect of the appraisal dealing with the value of tame pasture, land which the Debtors want reduced by $12,000.00. However, the matter of valuation is now unimportant due to the agreement between the parties.

The Debtors project net income from normal operations of $59,320.00, which is sufficient to fund the Plan. In addition to normal income of $121,680.00, the Debtors in the next two years will receive about $47,-

000.00 from the sale of grass seed. Such additional payments are also available to fund the Plan, so that over a 12 year period, the Debtors would have available cash reserves of $805,840.00 to pay its secured and unsecured creditors. As proposed, the Plan is therefore feasible.

■ The most significant problem with the Plan prior to agreement with Farmers and Merchant Bank dealt with Section 1129(a)(10). The Debtors request cram down under 1129(b), which means it must satisfy the conditions of 1129(a)(10), which reads:

"If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider."

The Debtors acknowledged before the agreement that no impaired class cast a ballot in favor of the Plan, but yet argue that since an impaired class did not vote to reject the Plan, such class is deemed to have accepted the Plan, and therefore the 1129(a)(10) condition is met. The overwhelming case authority is to the contrary, particularly since Section 1129(a)(10) was changed in 1984 by the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353. Prior to the 1984 amendments, some courts held that classes who were deemed to have accepted the Plan under section 1126 satisfied 1129(a)(10). It is clear the amendment was made by Congress so that the original intent of the 1978 Code would be followed by requiring one impaired class must affirmatively vote in favor of the Plan. Cases which so hold are: *In Re Barrington Oaks General Partnership and Starcrest Properties Ltd.,* 15 B.R. 952, 967–70 (Bankr.Utah 1981); *In Re Pine Lake Village Apartment Co.,* 19 B.R. 819, 829 (Bankr.S.D.N.Y. 1982); *In Re Polytherm Industries,* 33 B.R. 823, 838 (W.D.Wis.1983); *In Re Lloyd,* 31 B.R. 283, 285 (Bankr.W.D.Ky. 1983); *In Re Economy Cast Stone Co.,* 16 B.R. 647, 651 (Bankr.E.D.Va.1981); *In Re S & W Enterprises,* 37 B.R. 153 (Bankr.N. D.Ill.1984); *In Re Masnorth,* 28 B.R. 892

(Bankr.N.D.Ga.1983); *In Re Russell,* 44 B.R. 452, 453 (Bankr.E.D.N.C.1984); *In Re Marston Enterprises,* 13 B.R. 514, 520 (Bankr.E.D.N.Y.1981). Representative of the theory of each of the above cases is the language from *In Re Pine Lake Village Apts.,* supra, which held:

"At least one affirmatively accepting class is required; a deemed accepted class will not suffice."

See also 5 *Collier on Bankruptcy,* pp. 1129–31 (15th Ed.), stating:

"Thus, the only aspect of Section 1129(a)(10) which is perfectly clear is that a plan cannot be confirmed if each class is impaired and no single class accepts the plan."

Accordingly, since the Debtors have now secured an affirmative vote by an impaired creditor in favor of the modified Plan, Section 1129(a)(10) is satisfied.

■ It is the duty of the Court under Chapter 11 to determine independently that the Plan has met all of the requirements necessary for confirmation. *In Re Martin,* 66 B.R. 921, 925 (Bankr.Mont.1986). I conclude the Plan as to impaired creditors meets the requirements of Section 1129(a) [except (c)(8) ] and the requirements of Section 1129(b). The Plan does not unfairly discriminate against any creditor and is fair and equitable. It meets the so-called absolute priority rule under 1129(b) because all classes of senior creditors will be paid in full before any junior class or owner receives any property under the Plan. *In Re Martin,* supra, at 927.

I conclude after notice and hearing:

1. That the Plan complies with the applicable provisions of Chapter 11 of the Code;

2. That the proponents of the Plan comply with the applicable provisions of the Code;

3. That the Plan has been proposed in good faith and not by any means forbidden by law;

4. (A) That any payments made or promised by the Debtors for services or costs and expenses in connection with the case, or in connection with the Plan and

incident to the case, have been disclosed to the court;

(B) Any such payment made before confirmation is reasonable;

5. (A) Debtors have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtors, and appointment to or continuance in such office of such individual, is consistent with the interest of creditors and equity security holders and with public policy;

(B) That Debtors' Plan discloses the identity of any insider that will be employed or retained by the reorganized Debtors and the nature of cooperation of such insider;

6. With respect to each class:

(A) Each holder of a claim or interest of such class has accepted the Plan or will receive or retain under the Plan an account of such claim or interest property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under Chapter 7; or

(B) Under Section 1129(b)(2) of the Code, each holder of a claim of such class will receive or retain under the Plan an account of such claim property of a value as of the effective date of the Plan, that is not less than the value of such creditor's interest in the estate's interest in the property that secures such claims;

7. With respect to each class, such class has accepted the Plan and the Plan provides that:

(A) With respect to a claim of a kind specified in Sections 507(a)(1) or 507(a)(2) of the Code, on the effective date of the Plan, the holder of the claim will receive on account of such claim cash equal to the allowed amount of such claim.

(B) With respect to a class of claims of a kind specified in sections 507(a)(3), 507(a)(4), or 507(a)(5) of the Code, each holder of a claim of such class will receive, if such class has accepted the Plan, deferred cash payments of value, as of the effective date of the Plan, equal to the allowed amount of such claim; or, if such class has not accepted the Plan, cash on the effective date of the Plan equal to the allowed amount of such claim; or

(C) With respect to a claim of the kind in Section 507(a)(6) of the Code, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding 6 years after the date of assessment of such claim, of a value, as of the effective date of the Plan, equal to the allowed amount of such claim; or

(D) With respect to each class of secured creditors who are impaired under the Plan and have not accepted the Plan, the Plan does not discriminate unfairly and is fair and equitable with respect to each class and the Plan complies with Section 1129(b)(2)(A) of the Code;

8. At least one class of claims has accepted the Plan, determined without including any acceptance of the Plan by an insider holding a claim of such class;

9. No regulatory commission with jurisdiction is involved in the Plan.

10. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors or any successor debtor under the Plan, unless such liquidation is proposed in the Plan.

IT IS ORDERED Debtors' Chapter 11 Plan of Reorganization is confirmed.